IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RON P. MARTINEZ,

       Plaintiff,

vs.                                               1:17-cv-00506-LF

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on plaintiff Ron P. Martinez's Motion to

Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 20), which was fully

briefed on January 4, 2018. Docs. 22, 23, 24. The parties consented to my entering final

judgment in this case. Docs. 4, 7, 9. Having meticulously reviewed the record and being fully

advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") applied the

correct legal standards and that the ALJ's decision is supported by substantial evidence. The

Court therefore DENIES Mr. Martinez's motion and dismisses this case with prejudice.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[1] is supported by substantial evidence and whether the correct legal standards were

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. § 416.1581, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted) (brackets in original).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

## III.    Background and Procedural History

Mr. Martinez is an unmarried, 49-year-old man who obtained vocational training in carpentry after high school graduation. AR 35–36.[3] Mr. Martinez worked as a carpenter for 26 years. AR 36, 200, 224. Mr. Martinez has a son who does not live with him. AR 304, 308. Mr. Martinez lived with and cared for his mother for several months beginning in November 2015 until she entered a nursing home in 2016. AR 31, 32, 38, 273. Mr. Martinez filed applications

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 17-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

for Disability Insurance Benefits and Supplemental Security Income on September 5, 2013,[4] alleging disability beginning March 10, 2009, due to anxiety, panic attacks, major depression, vision problems, lower back problems, knees, shoulders, agoraphobia with panic disorder, and arthritis. AR 167–79, 192. The Social Security Administration ("SSA") denied his claims initially and on reconsideration. AR 44–129. Mr. Martinez requested a hearing on August 19, 2014. AR 130–32. On February 9, 2016, ALJ Kim Fields held a hearing, at which a medical expert, Mr. Martinez, and a vocational expert ("VE") testified. AR 28–43. Mr. Martinez appeared at the hearing without representation and signed a waiver of his right to representation. AR 30, 165. ALJ Fields issued an unfavorable decision on March 25, 2016. AR 10–27.

The ALJ determined that Mr. Martinez met the insured status requirements of the Social Security Act through March 31, 2014. AR 15. At step one, the ALJ found that Mr. Martinez had not engaged in substantial, gainful activity since March 10, 2009, the alleged onset date. *Id.* Because Mr. Martinez had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. *Id.* At step two, the ALJ found that Mr. Martinez had the following severe impairments: "degenerative disc disease (DDD); depression and anxiety." AR 15. At step three, the ALJ found that none of Mr. Martinez's impairments, alone or in combination, met or medically equaled a Listing. AR 15–17. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Martinez's RFC. AR 17–20. The ALJ found that:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except simple, routine and repetitive tasks; occasional contact with coworkers and the general public; and no

---

[4] The ALJ noted that the date of Mr. Martinez's applications for DIB and SSI is August 22, 2013. AR 13. The Court presumes this is a typographical error because Mr. Martinez's applications are dated September 5, 2013. AR 167, 174.

quotas. Further the claimant is limited to sit one hour, stand up to 30 minutes and
no overhead lifting.

AR 17.

At step four, the ALJ found that Mr. Martinez is unable to perform his past relevant work

as a carpenter. AR 20–21. The ALJ found that Mr. Martinez was not disabled at step five.

Relying on the VE testimony, the ALJ concluded that Mr. Martinez still could perform jobs that

exist in significant numbers in the national economy, such as "cutter and paster" and "document

preparer." AR 21–22. Mr. Martinez requested review by the Appeals Council, which denied the

request on March 8, 2017. AR 1–5, 8–9. Mr. Martinez timely filed his appeal to this Court on

May 1, 2017. Doc. 1.[5]

## IV. Mr. Martinez's Claims

Mr. Martinez raises five main arguments for reversing and remanding this case: (1) that

the ALJ failed to assess his work-related abilities on a function-by-function basis; (2) that the

ALJ failed to incorporate all of his mental limitations and failed to develop the record with

regard to his mental limitations; (3) the ALJ failed to properly assess certain medical opinions;

(4) that the ALJ's credibility determination was not closely and affirmatively linked to

substantial evidence; and (5) that the ALJ improperly relied on the VE testimony and failed to

provide a sufficient number of jobs that Mr. Martinez still could perform in the national

economy. Doc. 20 at 1–2, 5–21.

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the
decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2–3.

## V.     Discussion

### A.  Function-by-Function Assessment

Mr. Martinez first contends that the ALJ failed to include limitations in his RFC that are supported by the record because he failed to assess his work-related abilities on a function-by-function basis.  Specifically, Mr. Martinez argues that he has limitations in his ability to lift, carry, push, and reach objects, and handle and finger.  Doc. 20 at 5–6.  The ALJ, however, properly assessed each of Mr. Martinez's abilities, and a function-by-function assessment was not critical in this case.

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level."  SSR 83-10, 1983 WL 31251, at *2.  It reflects "the maximum amount of each work-related activity the individual can perform."  SSR 96-8p, 1996 WL 374184, at *7.  To insure accuracy, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945.  SSR 96-8p, 1996 WL 374184, at *1.  In other words, the ALJ must consider how the claimant's impairments affect his physical abilities, mental abilities, and other abilities.  20 C.F.R. §§ 404.1545(b)–(d) and 416.945 (b)–(d).  This assessment is important because an "adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have."  SSR 96-8p, 1996 WL 374184, at *4.  "Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case."  *Id*. at *3.

On the other hand, a function-by-function assessment is not always critical to the outcome of a case. For example, in *Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014), the ALJ determined that Ms. Hendron had the RFC "to perform the full range of sedentary work as defined in 20 C.F.R. [§] 404.1567(a)." *Id.* at 953 (internal quotations omitted). The ALJ had considered that prolonged sitting aggravated Ms. Hendron's lower back pain, but observed that it was pain she experienced either before or after the relevant time period. *Id.* at 957. The Tenth Circuit held that a function-by-function assessment was not critical to the outcome of the case because the evidence did not support a limitation on Ms. Hendron's ability to sit during the relevant time period. *Id.* (explaining that "the ALJ did not overlook Ms. Hendron's problems with sitting; he found that the evidence did not support any limitation on her ability to sit during the Relevant Time Period").

As in *Hendron*, a function-by-function assessment was not critical to the outcome of this case. The ALJ limited Mr. Martinez to sedentary work.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a); 415.967(a). Mr. Martinez argues that numbness and tingling in his arms affects his ability to lift, push, and carry objects. Doc. 20 at 5. Mr. Martinez testified that he cannot lift more than 10 pounds. *See* AR 38. By limiting Mr. Martinez to sedentary work, the ALJ's RFC limits Mr. Martinez only to jobs that "involve[] lifting no more than 10 pounds at a time." 20 C.F.R. §§ 404.1567(a); 415.967(a). There is no evidence in the record that Mr. Martinez is unable to lift or carry small articles such as docket files, ledgers, or small tools. Mr. Martinez's lifting and carrying abilities, therefore, are consistent with sedentary work. Further,

sedentary work does not typically involve pushing objects. *Id.* Thus, any limitation to Mr. Martinez's ability to push objects is consistent with the RFC.

Mr. Martinez also contends that his bi-lateral carpel tunnel syndrome limits his ability handle and finger. Doc. 20 at 6. "Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 96-9p, 1996 WL 374185, at *8. There is evidence that Mr. Martinez suffers from carpel tunnel syndrome, and numbness and tingling in his arms. AR 244, 266, 349–50, 354, 373–74, 376–77, 387. Mr. Martinez was prescribed wrist splints and received injections for carpel tunnel syndrome. AR 374, 376–77. There is no evidence, however, that the treatment was unsuccessful or that Mr. Martinez's carpel tunnel syndrome limits his ability to handle and finger. The conclusion drawn by counsel that Mr. Martinez's carpel tunnel syndrome caused specific limitations to his ability to handle and finger is not supported by any medical opinions or other evidence in the record.

Finally, in his opening brief, Mr. Martinez summarizes his medical records with regard to his cervical and lumbar spine, knee and back pain, torn rotator cuff, depression, and anxiety. Doc. 20 at 6–13. Mr. Martinez contends that the ALJ failed to make "specific findings," and that the substantial objective evidence supports Mr. Martinez claimed limitations. *Id*. at 10. Mr. Martinez, however, presents no legal authority or argument that establishes how or why these particular medical issues limited his functional abilities more than the ALJ assessed in his RFC. The Court will consider and discuss only the contentions that have been adequately briefed. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir.2004) ("The scope of our review . . . is limited to the issues the

claimant . . . adequately presents on appeal.")).  The Court will not discuss or consider the summarized medical records because Mr. Martinez does not explain why these medical records make a function-by-function analysis critical to this case.

The evidence in this case does not support any work-related limitations beyond Mr. Martinez's ability to perform sedentary work as described in the RFC.  Thus, a function-by-function assessment was not critical to the outcome, and the ALJ did not err in failing to assess Mr. Martinez's limitations on a function-by-function basis.

B.  Failure to Develop the Record.

Mr. Martinez contends that the ALJ failed to develop the record with regard to his mental impairment.[6]  Doc. 20 at 13–16.  Mr. Martinez argues that "the record did not contain a psychological consultative evaluation and the ALJ failed to order one."  Doc. 20 at 14.[7]

While an ALJ has the duty to develop the record, the Commissioner has broad latitude in deciding whether to order a consultative exam.  *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).  Generally, an ALJ should order a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record.  *Id*. (internal citations omitted); *see also* 20 C.F.R. § 416.919a (describing the

---

[6] In a footnote, and in his reply brief, Mr. Martinez argues that the ALJ failed to develop the record with regard to his "vision problems."  Doc. 20 at 13 n.6; Doc. 23 at 1–2.  Mr. Martinez does not explain, however, what the ALJ needed to do to develop the evidence and why that failure creates reversible error.  The Court will not address this issue because it is not adequately briefed.  *Keyes-Zachary*, 695 F.3d at 1161.

[7] Mr. Martinez asserts that the ALJ "failed to develop the record regarding the mental impairment."  Doc. 20 at 13.  He then goes on to discuss errors in the RFC and the ALJ's failure to asses doctors' opinions which are addressed in other sections in this opinion.  *Id*. at 14–16.  The only failure-to-develop argument the Court could discern from the briefing was that the ALJ failed to order a consultative examination; consequently, the Court only addresses this issue.

situations that may require a consultative examination).  "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."  *Hawkins*, 113 F.3d at 1167 (quoting 20 C.F.R. § 404.1512(f). 20 C.F.R. § 404.1519a).

Mr. Martinez does not point to any direct conflict in the medical evidence requiring resolution, or to where the medical evidence in the record is inconclusive, or to where additional tests are required to explain a diagnosis already contained in the record.  Indeed, as Mr. Martinez points out, "the ALJ had before him two opinions that Mr. Martinez had moderate and marked limitations in areas of mental functioning required for all work."  Doc. 20 at 14.  Further, Mr. Martinez acknowledges that a medical expert, Dr. Adams, testified at the hearing.  Doc. 20 at 14; Doc. 23 at 1, 2.  Dr. Adams also found moderate limitations in areas of mental functioning required for all work.  AR 34–35.  Consequently, the evidence was sufficient to support a decision, and a consultative examination was not necessary.  The ALJ did not err by failing to order a consultative examination.

### C.  RFC Finding

Mr. Martinez contends that the ALJ failed to account for mental limitations in his RFC. This argument is without merit.  First, Mr. Martinez misstates the record.  He argues that "the ALJ found Mr. Martinez to have a marked limitation in social functioning due to agoraphobia, yet failed to properly incorporate that limitation into the RFC, finding Mr. Martinez could have occasional interaction with coworkers and the public and putting no limitations on his ability to interact with supervisors."  Doc. 20 at 14.  The ALJ was not so specific.  At step three, in assessing whether Mr. Martinez's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ found:

In social functioning, the claimant has marked difficulties. The Claimant has alleged panic attacks and reported he avoids going out, especially to restaurants. He has been noted to be uncomfortable with the general public. I find claimant's mental impairments result in marked difficulties in social functioning.

Neither the ALJ, nor any medical provider, found that Mr. Martinez had a marked limitation in social functioning due to agoraphobia.[8]

Further, Mr. Martinez does not develop this argument. *Id.* He does not present any legal authority or argument that agoraphobia[9] would impact his ability to occasionally interact with co-workers and the public. The Court therefore will not address this contention. *Keyes-Zachary*, 695 F.3d at 1161.

Finally, there is no evidence in the record that Mr. Martinez has difficulties interacting with supervisors. In fact, the opposite is true. Both Mr. Martinez and his mother indicated that Mr. Martinez gets along well with authority figures. AR 219, 229. The ALJ properly assessed the RFC in this regard.

---

[8] The ALJ's Step 3 finding of marked limitations in social functioning is not required to be incorporated in the ALJ's RFC findings because more detailed findings were considered and incorporated in the ALJ's Step 4 analysis. *See Bales v. Colvin*, 576 F. App'x. 792, 797–98 (10th Cir. 2014) (unpublished); *see also Harrison v. Colvin*, 2015 WL 5730611, at *13–14 (D. Kan. Sept. 30, 2015).

[9] Agoraphobia "is a type of anxiety disorder in which you fear and avoid places or situations that might cause you to panic and make you feel trapped, helpless or embarrassed. You fear an actual or anticipated situation, such as using public transportation, being in open or enclosed spaces, standing in line, or being in a crowd. The anxiety is caused by fear that there's no easy way to escape or get help if the anxiety intensifies. Most people who have agoraphobia develop it after having one or more panic attacks, causing them to worry about having another attack and avoid the places where it may happen again. People with agoraphobia often have a hard time feeling safe in any public place, especially where crowds gather. You may feel that you need a companion, such as a relative or friend, to go with you to public places. The fear can be so overwhelming that you may feel unable to leave your home."
https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987
(last visited on 2/14/2019).

D.  <u>Medical Opinions</u>

Mr. Martinez's main contention with the ALJ's RFC assessment is that he failed to properly assess the medical opinions of Dr. Adams and Dr. Gucker.

1.  *Dr. Adams*

Mr. Martinez first contends that the ALJ failed to incorporate the opinion of Dr. Adams into the RFC.  Doc. 20 at 14.  Dr. Adams opined that Mr. Martinez did not have any marked impairment in his functioning.  AR 34.  He further opined that Mr. Martinez was "capable of at least superficially interacting with others," and that Mr. Martinez had a moderate impairment for concentration, persistence and pace.  *Id.*  Further, in Dr. Adams' opinion, "[i]t does appear [Mr. Martinez] would have trouble with high stress situations.  He's capable of being polite to others, but he may be uncomfortable with crowds or situations where he has to deal with the general public."  AR 35.  Mr. Martinez argues that "[o]ther than limiting Mr. Martinez to simple work, the ALJ failed to incorporate these limitations into the RFC.  The limitation to simple work does not address Mr. Martinez's ability to deal with stress."  Doc. 20 at 14.  This argument is without merit.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Here, Mr. Martinez does not explain how the RFC assessed by the ALJ failed to incorporate Dr. Adams' opinions.  Mr. Martinez cites SSR 85-15, 1985 WL 56857 and notes that ruling "required the ALJ to consider that 'the reaction to the demands of work (stress) is highly individualized, and

mental illness is characterized by adverse responses to seemingly trivial circumstances." Doc. 20 at 14 (quoting SSR 85-15). Mr. Martinez does not explain how the ALJ failed to follow the legal standards set out in the SSR. The ALJ stated that he carefully considered the entire record, and, in the absence of evidence to the contrary, the Court will take him at his word. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

Moreover, the ALJ's RFC assessment adequately accounted for Dr. Adams' opinions. SSR 85-15 emphasizes the importance of evaluating stress and mental illness on an individualized basis and cautions an ALJ to not define an individual's response to the demands of work simply as a skill level in the RFC.[10] SSR 85-15, 1985 WL 56857, at *5–6. "The skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." SSR 85-15, 1985 WL 56857, at *6. Further, "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC statement." *Id*.

Here, the ALJ did not simply define Mr. Martinez's RFC by a skill level. The ALJ limited Mr. Martinez to simple, routine and repetitive tasks, occasional contact with coworkers and the general public, and no quotas. AR 17. These limitations adequately reflected Dr. Adams' opinion that Mr. Martinez "would have trouble with high stress situations." AR 35. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("This approach is acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for

---

[10] The Social Security Administration classifies work in the national economy by the exertional levels of sedentary, light, medium, heavy or very heavy. SSR 83-10, 1983 WL 31251, at *2.

moderate limitations by limiting the claimant to particular kinds of work activity.") (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)); s*ee also Lee v. Colvin*, 631 F. App'x 538, 539–42 (10th Cir. 2015) (unpublished) (finding the ALJ's RFC reflected the nonexertional limitations identified by the nonexamining agency psychological consultant by limiting the claimant to performing simple tasks and requiring only routine supervision and superficial interaction with supervisors and peers). The ALJ adequately accounted for Dr. Adams' opinions in the RFC.

### 2. *Dr. Gucker*

Mr. Martinez contends that the ALJ failed to properly assess the opinion of the non-examining state psychologist Donald Gucker, Ph.D., who found Mr. Martinez to have certain moderate limitations that the ALJ did not include in the RFC. Doc. 20 at 15–16. Mr. Martinez argues that the ALJ's RFC did not explain the inconsistency between his RFC assessment and the conclusions made by Dr. Gucker. Doc. 20 at 16. He further argues that the ALJ failed to state how much weight he gave Dr. Gucker's opinion. *Id*.

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[11] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. As stated above, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's

---

[11] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017.

RFC from the medical record." *Chapo*, 682 F.3d at 1288. Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

Mr. Martinez argues that the ALJ impermissibly "picked and chose" from the moderate mental limitations in Dr. Gucker's opinion. Doc. 20 at 16. He contends that the ALJ incorporated some of the limitations but not others into his RFC determination and "offered no

explanation for the inconsistency between his RFC finding and the finding of the doctor whose opinion he supposedly adopted." *Id.* Mr. Martinez complains that the ALJ failed to include some of the moderate limitations in Section I of Dr. Gucker's Mental Residual Functional Capacity Assessments ("MRFCA") in to the RFC. *Id.* at 15–16.

The Commissioner counters that the ALJ's RFC "adequately accounted" for all of the moderate limitations found by Dr. Gucker.[12] Doc. 22 at 11. The Commissioner argues that the conclusions in Section I "are not part of the formal opinion of [Dr. Gucker]." Doc. 22 at 10. Instead, the actual mental assessment is recorded in the "Additional Explanation" section (formerly known as Section III and referred to as "Section III" herein) of the MRFCA. Doc. 22 at 10. While I disagree with the Commissioner that an ALJ need not consider the conclusions in Section I,[13] I agree that the ALJ adequately accounted for the moderate limitations found by Dr. Gucker.

An ALJ is required to consider and discuss both Section I and Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments that an ALJ is not required to consider Section I findings, the Program Operations

---

[12] The Commissioner includes Dr. Johnson, another state agency, non-examining doctor in her argument. Doc. 22 at 9–14. Although Dr. Johnson's opinions mirror Dr. Gucker's opinions, Mr. Martinez did not raise the issue with regard to Dr. Johnson's opinions. Accordingly, the Court will only address issues raised by Mr. Martinez regarding Dr. Gucker's opinions. These findings and rulings, however, apply with equal weight to the opinions of Dr. Johnson, as they are the same as those found by Dr. Gucker.

[13] I repeatedly have rejected the Commissioner's argument that the ALJ need only account for a doctor's Section III findings. *See, e.g., Heckel v. Colvin*, No. 15cv453-LF, 2016 WL 9781164 (D.N.M. Sept. 28, 2016); *Martinez v. Colvin*, No. 15cv817-LF, 2016 WL 9774939 (D.N.M. Nov. 23, 2016); *Bennett v. Berryhill*, No. 16cv399-LF, 2017 WL 5612154 (D.N.M. Nov. 21, 2017); *Jones v. Berryhill*, No. 15cv842-LF, 2017 WL 3052748 (D.N.M. June 15, 2017); *Saavedra v. Berryhill*, No. 16cv822-LF, 2018 WL 324236 (D.N.M. Jan. 8, 2018); *Dorsainville v. Berryhill*, No. 16cv693-LF, 2018 WL 637393 (D.N.M. Jan. 31, 2018).

Manual System ("POMS"),[14] regulations, and case law require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016). An ALJ may rely exclusively on the Section III findings only if the "Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). The ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee*, 631 F. App'x at 541. If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).

When an ALJ relies solely on a doctor's Section III narrative, this Court must analyze whether the Section III narrative "adequately encapsulates" the moderate limitations in Section I of the doctor's opinion. *See Carver*, 600 F. App'x at 619. The Court also must determine whether the ALJ adequately accounted for the limitations noted by Dr. Gucker in the RFC assessment, or alternatively, whether the ALJ adequately explained why any missing limitations were rejected.

In Section I of his MRFCA, Dr. Gucker found that Mr. Martinez had the following moderate limitations:

---

[14] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

- Moderately limited in the ability to understand and remember detailed instructions;

- Moderately limited in the ability to maintain attention and concentration for extended periods;

- Moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them;

- Moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- Moderately limited in the ability to interact appropriately with the general public; and

- Moderately limited in the ability to set realistic goals or make plans independently of others.

AR 53–55.[15]  In Section III of the MRFCA, Dr. Gucker found:

> when treatment compliant and substance free, [Mr. Martinez] retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact appropriately with cowokers; supervisors and the general public on an incidental basis.

AR 55.  The ALJ did not discuss any of the moderate limitations assessed by Dr. Gucker included in Section I.[16]  Thus, the Court must determine whether Dr. Gucker's Section III findings "adequately encapsulate" the limitations noted in Section I of his opinion.  *See Carver*, 600 F. App'x at 619.

Dr. Gucker's Section III findings adequately encapsulate the limitations noted in Section I of his opinion.  For example, Dr. Gucker's findings in Section I that Mr. Martinez had a

---

[15] Dr. Johnson found identical moderate limitations on reconsideration.  AR 103–05.

[16] Indeed, the ALJ does not mention Dr. Gucker's opinions at all.  Plaintiff, however, does not raise this particular fact as a basis for reversal, and the Court will not address it.

moderate limitation in his ability to "understand and remember detailed instructions," AR 53, is adequately encapsulated in his Section III opinion that Mr. Martinez "retains the capacity to understand, remember, and carry out simple instructions." AR 55. In Section I, Dr. Gucker found that Mr. Martinez was moderately limited in his ability to "maintain and concentrate for extended periods," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 54. These limitations are adequately encapsulated in his Section III opinion that Mr. Martinez could "attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms." AR 55. Finally, Dr. Gucker found that Mr. Martinez was moderately limited in his ability to "interact appropriately with the general public," "work in coordination with or proximity to others without being distracted by them," and "set realistic goals or make plans independently of others." AR 54–55. These limitations are adequately encapsulated in Dr. Gucker's conclusions that Mr. Martinez is capable of exercising reasonable judgment, and also of interacting appropriately with coworkers, supervisors, and the general public on an incidental basis. AR 55. Because all of the moderate limitations in Dr. Gucker's Section I findings are adequately encapsulated in his Section III narrative, the ALJ did not impermissibly "pick and choose." Instead, the ALJ appropriately relied on Dr. Gucker's Section III "Additional Explanations" in formulating Mr. Martinez's RFC.

Mr. Martinez further criticizes the ALJ for failing to state how much weight he gave Dr. Gucker's opinion. "It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary*, 695 F.3d at 1161 (*citing* 20 C.F.R. §§ 404.1527(c), 416.927(c)). An ALJ is required to discuss the weight he assigns to each medical opinion. *Id.* (citing 20 C.F.R.

§§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).  Where, however, the RFC is generally consistent with the medical opinion, "[t]here is no reason to believe that a further analysis or weighing of this opinion could advance [the claimant's] claim of disability."  *Id.* 695 F.3d at 1163.

Here, the ALJ's RFC is consistent with Dr. Gucker's opinion.  The ALJ assessed Mr. Martinez to have a mental residual functional capacity to perform simple, routine and repetitive tasks with only occasional contact with coworkers and the general public and no quotas.  AR 17.  This mental RFC finding is consistent with a person who retains the capacity to "understand, remember and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without psychologically-based symptoms, exercise reasonable judgment, interact appropriately with coworkers, supervisors and the general public on an incidental basis."  AR 55.  While the ALJ failed to specify what weight he gave Dr. Gucker's opinions, the RFC was generally consistent with Dr. Gucker's opinions and "[t]here is no reason to believe that a further analysis or weighing of this opinion could advance [the claimant's] claim of disability."  *Keyes-Zachary*, 695 F.3d at 1163.

The ALJ properly assessed the opinions of both Dr. Adams and Dr. Gucker, and remand is not required on this basis.

E.  Credibility Analysis

Mr. Martinez asserts that the ALJ failed to perform a proper credibility analysis.  Doc. 20 at 17–18.  Mr. Martinez criticizes the ALJ for making an adverse credibility determination based on Mr. Martinez's daily activities, the "normal" findings in the medical records, the fact that Mr. Martinez was only provided conservative treatment, and had no psychiatric hospitalizations.  *Id*.  Mr. Martinez's arguments are without merit because each of the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.

In considering a claimant's subjective complaints of pain or other symptoms, an ALJ is required to consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). In doing so, the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. *Brownrigg v. Berryhill*, 688 F. App'x 542, 545−46 (10th Cir. 2017) (unpublished) (citing *Keyes-Zachary*, 695 F.3d at 1166−67)).

An RFC determination must be based on the entire record, including the credibility of the plaintiff's subjective complaints. *Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009) (citing 20 C.F.R. §§ 416.929, 416.945). Accordingly, "the ALJ's credibility and RFC determinations are inherently intertwined." *Id*. at 1171. Courts generally defer to the ALJ's credibility finding because "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett*, 395 F.3d at 1173 (internal quotation and citation omitted). However, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*.

As part of the credibility analysis, the ALJ should consider the following factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3.[17]   While the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence," the ALJ must set forth the specific evidence relied upon in evaluating the claimant's credibility.  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (internal citation and quotations omitted).

In this case, the ALJ found that while Mr. Martinez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ also found that Mr. Martinez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ."  AR 19.   The ALJ considered the factors outlined in SSR 96-7p, and these findings are closely and affirmatively linked to substantial evidence.

---

[17] Notably, at the time of the ALJ's decision, an ALJ's credibility evaluation was governed by SSR 96-7p.  On March 16, 2016, the Commissioner issued SSR 16-3p, 2016 WL 1119029, which superseded SSR 96-7p, eliminated the use of the term "credibility," and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted).  The policy change did not go into effect until March 28, 2016.  SSR 16-3p, 2016 WL 1237954, at *1 (noting effective date as March 28, 2016).  The Social Security Administration subsequently republished SSR 16-3p, and explained that the SSR is not retroactive.  SSR 16-3p, 2017 WL 5180304, at *1 ("When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review.").  Accordingly, in this case, the Court evaluates the ALJ's decision under the superseded ruling, SSR 96-7p.

The ALJ explained that Mr. Martinez's daily activities suggest he is more functional than he alleges. AR 19. Specifically, the ALJ determined that although Mr. Martinez claims to have disabling back and knee pain, he continues to be capable of independent personal care, performing household chores, driving, going out alone, and watching television. AR 19. These conclusions are supported by substantial evidence in the record. AR 35–36, 38, 39, 224–27, 230. There is also substantial evidence to support the ALJ's finding that despite a diagnosis of degenerative disk disease, "physical examinations have documented most[ly] normal findings, including normal gait, intact sensation and reflexes, 5/5 motor strength bilaterally as well as 5/5 grip strength bilaterally." AR 19; *see also* AR 374, 376, 380, 383, 392.

The ALJ further concluded that the medical records show conservative treatment which gave Mr. Martinez relief, with no additional or aggressive treatment indicated. AR 19. Mr. Martinez's doctors recommended wrist splints to treat carpal tunnel syndrome, and injections for his cervical spinal stenosis. AR 374, 377, 385, 386–87. While the records mention that if the injections are not helpful, "then surgery," (AR 38) there is no indication that surgery was ever recommended or performed. Additionally, the record supports the ALJ's observation that Mr. Martinez had not been hospitalized for psychiatric reasons during the relevant time period. AR 20.

The ALJ also noted that there is reason to believe that Mr. Martinez stopped working for reasons other than the alleged disabling condition. AR 19–20. Mr. Martinez had explained to his health care providers that he believes his anxiety and depression "is related to [him] not having enough work since the [recession] in [housing]," AR 304, and that he "has struggled with work since the economy worsened," AR 303, 339, 399.

All of the reasons for finding Mr. Martinez less than credible are closely and affirmatively linked to substantial evidence. "Plaintiff's argument to the contrary constitutes an invitation to this [C]ourt to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation [the Court] must decline." *Hackett*, 395 F.3d at 1173.

The ALJ explained that the objective evidence confirms that Mr. Martinez is stable when he is taking his medication, but that Mr. Martinez has not been fully compliant. AR 20. Mr. Martinez criticizes the ALJ for failing to consider that Mr. Martinez had trouble affording his medication. Doc. 20 at 18. Although it is true that the ALJ did not consider whether Mr. Martinez could afford his medication, any error by the ALJ is harmless.[18]

When an ALJ decides that a claimant has failed to follow prescribed treatment, a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable. SSR 82-59, 1982 WL 31384, at *1. In order to rely on the claimant's failure to pursue treatment as support for a finding of non-credibility, the ALJ should consider four factors: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993). One justifiable excuse is that a claimant cannot afford the medication. SSR 82-59, 1982 WL 31384, at *4. The *Thompson* analysis applies to "cases in which the claimant fails to

---

[18] Although neither party raised the issue of harmlessness with regard to the ALJ's finding of credibility, the Court "may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings." *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (unpublished) (quoting *Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)).

pursue medical treatment because he cannot afford it." *Lee v. Barnhart*, 117 F. App'x 674, 681 (10th Cir. 2004) (unpublished) (*citing Thompson*, 987 F.2d at 1489–90).

Here, there is no dispute that the ALJ failed to discuss the four *Thompson* factors. However, that error is harmless. The Tenth Circuit has explained that a court might rely upon harmless error analysis in those situations where it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004). The failure to analyze the four factors is harmless "where the balance of the ALJ's credibility analysis is supported by substantial record evidence." *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).

In *Branum*, the ALJ found the plaintiff's allegations of disabling pain were not credible, and one of the reasons given for that finding was that "the evidence fails to reflect that claimant sought any definitive treatment." 385 F.3d at 1274. The court noted that the plaintiff was "correct that the ALJ may not discredit her for a lack of treatment or aggressive testing when . . . she has a legitimate reason for failing to get additional treatment, such as a lack of funds." *Id.* (internal citation, quotations, and brackets omitted). Although the court expressed some concerns about the other reasons for disregarding the claimant's credibility, it concluded "that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record," and it affirmed the decision below. *Id.*, 385 F.3d at 1274. In other words, even though an ALJ may err in failing to apply the four factors, any error is harmless where the balance of the ALJ's credibility analysis is supported by substantial record evidence.

Here, the ALJ gave several reasons for discounting Mr. Martinez's credibility: 1) Mr. Martinez's daily activities showed he is more functional than he alleges; 2) his physical examinations have documented normal findings; 3) the medical record showed conservative

treatment; 4) there was evidence that Mr. Martinez stopped working because of the economic downturn, not his alleged disabling condition; 5) Mr. Martinez had not been hospitalized for psychiatric reasons; 6) he is stable on medication but not compliant; and 7) Mr. Martinez's use of alcohol and cannabis "does little to bolster [his] credibility." AR 19–20. Mr. Martinez's failure to comply with medication is only one of seven reasons the ALJ gave for finding Mr. Martinez's statements concerning the intensity, persistence and limiting effects of his symptoms credible. As discussed above, at least five of the other reasons the ALJ gave for discounting Mr. Martinez's statements were closely and affirmatively linked to substantial evidence.[19] Consequently, the Court can confidently say that the ALJ's failure to determine whether there was a legitimate justification for Mr. Martinez's failure to comply with medical treatment is harmless. No reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way because there were several other reasons that supported the ALJ's decision to discount Mr. Martinez's credibility. The Court will not remand on this basis.

F. Vocational Testimony at Step Five

At step five, it is the Commissioner's burden to establish that—considering the claimant's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999) ("If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the

---

[19] Mr. Martinez did not raise the issue of whether it was proper for the ALJ to discount his credibility by noting his use of alcohol and cannabis.

claimant can perform with the limitations the ALJ has found him to have."). An ALJ may use a vocational expert at step five to supply an opinion about the claimant's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). Furthermore, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-04p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.").

Relying on the VE testimony, the ALJ determined at step five that Mr. Martinez could perform jobs such as "cutter and paster" and "document preparer." AR 21. Mr. Martinez first attacks the ALJ's step five determination by arguing that the VE's job listings are tainted by the flawed RFC. Doc. 20 at 19. Mr. Martinez next argues that a document preparer job has a higher reasoning level than the ALJ determined Mr. Martinez was capable of performing. *Id.* Mr. Martinez further urges the Court to disregard the cutter and paster job and "use 'common sense' to decide whether that job exists in this era of advanced technology." *Id.* at 20. Finally, Mr. Martinez argues that the ALJ's failure to find the existence of three jobs is reversible error.

Mr. Martinez's first argument fails because the Court has determined that the RFC was not flawed. *See* discussion *supra.* Mr. Martinez's second argument, however, is meritorious. Essentially, Mr. Martinez argues that the VE testimony was inconsistent with the Dictionary of Occupational Titles (DOT), and that the ALJ committed reversible legal error in failing to resolve the conflict between the VE testimony and the DOT. Doc. 20 at 19. "Agency

regulations and policy direct ALJs to consider the [Dictionary of Occupational Titles ("DOT")] as the primary source of occupational information used in disability determinations." SSR 00-4p, 2000 WL 1898704, at *2; 20 C.F.R. § 416.960(b)(2); SSR 82-61, 1982 WL 31387, at *2. The reasoning level for each occupation can be found in the "definition trailer" following the DOT description of each occupation. For example, the definition trailer for document preparer, DOT No. 249.587-018 reads: GOE: 07.05.03 STRENGTH: S GED: R3 M1 L2 SVP: 2 DLU: 86. https://occupationalinfo.org/24/249587018.html (last visited March 4, 2019). The "general educational development," or "GED," component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L). *See* APPENDIX C − COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Thus, document preparer has a reasoning level of 3.

The ALJ found that Mr. Martinez had the mental capacity to perform "simple, routine and repetitive tasks." AR 17. Mr. Martinez correctly points out that the Tenth Circuit has found that a claimant limited to simple, routine and repetitive tasks is inconsistent with the demands of level-three reasoning. Doc. 20 at 19 (citing *Hackett*, 395 F.3d at 1176). I agree with Mr. Martinez that the ALJ committed legal error in failing to explain the conflict between the VE testimony—that Mr. Martinez could perform the job of document preparer—and the DOT for the document preparer job. This error, however, is harmless because even assuming that Mr. Martinez cannot perform this job, there is at least one other job—cutter and paster—that exists in significant numbers in the national economy that he can perform.

In Mr. Martinez's third argument, he urges the Court to disregard the job of cutter and paster and "use 'common sense' to decide whether this job exists in this era of advanced technology." Doc. 20 at 20. Agency regulations and policy direct ALJs to consider the DOT as

"reliable job information" and to "rely primarily on the DOT for information about the requirements of work in the national economy" for disability determinations. SSR 00-4p, 2000 WL 1898704, at *2; 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); 20 CFR §§ 404.1566(d), 416.966(d); SSR 82-61, 1982 WL 31387, at *2. Although the DOT may be dated, ALJs still may rely on it. *See Haddock*, 196 F.3d at 1089–90 (holding the ALJ is allowed to rely on the DOT at step five); *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1244 (D.N.M. 2017) ("the regulations explicitly list the DOT as an example of a publication from which the administration will take administrative notice of job data").

Here, it was proper for the ALJ to rely on the VE testimony based on the current DOT. Whether the DOT is relevant to today's job market is not an issue for this Court to decide. The Court's role in social security cases is limited to determining whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. The Court will not determine the validity of the resources used by the Commissioner when the Commissioner has followed the correct legal standards. The Court finds no reversible error for the ALJ's reliance on the job of cutter and paster. Further, Mr. Martinez cites to a single unpublished case—*Anders v. Berryhill*, 688 F. App'x 514, 523 (10th Cir. 2017)—to support his argument that the Court can rely on "common sense" to determine that the job of cutter and paster no longer exists given "this era of advanced technology." Doc. 20 at 20. The court in *Anders*, however, merely observed that "it appears to us (as a matter of common sense) that gluer and inspector/hand packager are types of jobs that occur across industries." *Id.* The court thus concluded that the VE's testimony regarding the number of these jobs in the national economy was a reliable basis for the ALJ's step-five finding. *Id.* The court in no way suggested

that reviewing court may disregard a VE's testimony based solely on the court's own common sense. *See id.*

Finally, Mr. Martinez argues that the Programs Operational Manuel System ("POMS") requires an ALJ to provide three jobs to support a finding of no disability. Doc. 20 at 21. The POMS are "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir.1999). The POMS do not have the force of law and are not binding on the SSA or this Court. *See Wicks v. Colvin*, 2013 WL 6057986, at *7 n.6 (D. Colo. Nov. 12, 2013) (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000)). Courts may "defer to the POMS provisions unless we determine they are arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir.2001) (internal quotation and citation omitted).

Here, the POMS are not consistent with Tenth Circuit case law that holds that as long as the ALJ identifies at least one job the claimant can perform and that exists in significant numbers, there is no reversible error. For example, in *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009), the Tenth Circuit found no reversible error where the ALJ identified three jobs, but the claimant was able to perform only one of the jobs. That job, however, existed in sufficient numbers in the national economy to satisfy the standard at step five. *Id*. at 1274; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004) (noting that improper reliance on two of three jobs identified by VE could have been deemed harmless error "had the number of available jobs identified by the VE [in the one occupation consistent with the claimant's RFC] not been one hundred but considerably greater"); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (applying Allen to find harmless error under similar circumstances, holding that "even if we consider only the[ ] two jobs [that properly matched the claimant's RFC] out of the

four considered by the ALJ" no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers" at step five).

In this case, the ALJ found that Mr. Martinez could perform two jobs—document reviewer and cutter and paster. As discussed above, the document reviewer job requires a reasoning level higher than what the ALJ determined Mr. Martinez could perform, and it cannot support the ALJ's finding of no disability. The VE testified, however, that the number of available cutter and paster jobs is 194,977 nationally, and 727 in New Mexico. Mr. Martinez does not dispute those numbers. Mr. Martinez also does not dispute that 194,977 jobs in the national economy qualifies as "significant." Indeed, the Tenth Circuit has found that less than 194,977 jobs in the national economy is sufficient to satisfy the ALJ's burden at step five. *See Stokes*, 274 F. App'x at 684 (finding 152,000 jobs in the national economy sufficient). Because the ALJ identified work that Mr. Martinez can perform and that exists in significant numbers in the national economy, remand is not required.

## VI.     Conclusion

For the foregoing reasons, the Court finds substantial evidence supports the Commissioner's final decision, and either the ALJ applied the correct legal standards or any errors committed by the ALJ are harmless.

IT IS THEREFORE ORDERED that Ron P. Martinez's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 20) is DENIED, and the Commissioner's decision is AFFIRMED. This case is DISMISSED with prejudice.

Laura Fashing
United States Magistrate Judge
Presiding by Consent